It fails to appear from the allegations of the petition, in counts 1 and 5 as amended, that the plaintiff is entitled to recover of the defendants the sum sued for, and therefore the judge did not err in sustaining the demurrers to these counts. Count 4 sets out a cause of action, and the court erred in sustaining the demurrer to that count.
 DECIDED DECEMBER 4, 1942. ON REHEARING, DECEMBER 19, 1942.
G. H. Law filed suit against Hudgins Transfer Company Inc. and A. G. Wimpy, and alleged that the defendants were indebted *Page 725 
to him in the sum of $1868.75. The petition was in four counts. It was alleged in counts 1, 2 and 3 that the defendants were indebted to the plaintiff in the above sum by reason of a contract of rental between the parties as to certain motor trucks. In count 4 it was alleged that the defendants had purchased the trucks and by reason thereof were indebted to the plaintiff. The defendants filed separate demurrers to the petition. Thereupon the plaintiff amended the petition, struck counts 2 and 3, and added count 5. Hudgins Transfer Company Inc. renewed its demurrers and also demurred to count 5. Wimpy did not renew his demurrers. The court sustained the demurrers of Hudgins Transfer Company Inc. to counts 1, 4 and 5 of the petition, and to the petition as amended, and dismissed the action. The court also passed an order sustaining the general demurrers of Wimpy, and recited that all counts of the petition reached by the general demurrer of this defendant "are hereby stricken."
The substance of counts 1 and 5 of the petition is that about the first part of December 1940 the plaintiff orally agreed with Wimpy to jointly rent to him and Hudgins Transfer Company Inc. certain automobile trucks to be used in construction work at Camp Macon, a United States military camp at Macon, Georgia, for a certain agreed rental price per hour for the use of the trucks; that such trucks were placed by the plaintiff in the service of the defendants at the camp on December 3 of that year; that about December 7, 1940, the plaintiff agreed orally with Wimpy to rent jointly to him and the transfer company certain other automobile trucks to be used at this camp at the same rental per hour; that these trucks were placed by the plaintiff in the service of the defendants at the camp about December 9, 1940; that the transfer company approved and ratified these rental agreements by allowing the trucks to remain in service, after notice and knowledge thereof, by using the trucks on the construction job in which they were engaged at the camp, and by paying to the plaintiff rental for the trucks at the rate agreed on; that J. H. Hudgins, president of the transfer company, knew and had notice by January 18, 1941, if not before, that the plaintiff's trucks had been placed on the job, or that the transfer company for the use of the trucks remitted rental thereon at the agreed rate in the sum of $6385.01; that these remittances were made by checks of the transfer company payable *Page 726 
jointly to the plaintiff and to Wimpy; that these checks were indorsed by Wimpy and delivered to the plaintiff on and between January 18, 1941, and April 20, 1941, and that about February 14, 1941, the plaintiff executed a written agreement which was delivered to Wimpy. This agreement was dated December 2, 1940, and was between the transfer company and Wimpy as parties of the first part, and the plaintiff as party of the second part, and provided as follows: "Hudgins Transfer Company Inc. has a certain contract with Beers Construction Company and W. L. Cobb Construction Company to furnish a certain number of trucks on a contract that they have with the United States government to build a camp to be known as Camp Macon, Macon, Georgia. G. H. Law is desirous of placing a number of trucks on this job for Hudgins Transfer Company Inc. He has also made a bill of sale to Hudgins Transfer Company Inc. for same. The Federal government has a recapture clause in this contract whereby they have a right to pay up to a certain amount as rent on this equipment, and this equipment, and this property would become theirs. All parties have agreed on the government appraisal on this equipment, and it is understood and agreed if they exercise this option this property will become the property of the Federal government; and in this case G. H. Law would have no further claim on this equipment against Beers Construction Company, W. L. Cobb Construction Company, Hudgins Transfer Company Inc., or A. G. Wimpy. The price agreed upon as the rental will be $1.25 per hour." This contract further recited that it was executed by G. H. Law on February 14, 1941. It was attached to and made a part of the petition, rather than a part of any particular count of the petition, and reference to the contract so attached to the petition was prayed.
The petition further alleged that sometime before March 1941, while the trucks were being used in construction work at Camp Macon and before the time the trucks were recaptured by the government, Wimpy delivered this written agreement to the transfer company by handing it to H. H. Hudgins, president; that after a period beginning December 2, 1940, and ending in May 1941 the transfer company operated as subcontractor a fleet of trucks at Camp Macon under written "equipment rental agreements" with Beers Construction Company and W. L. Cobb Construction Company who were the contractors, which agreements contained a *Page 727 
clause in substance that when and if the total rent paid to the lessor for any piece of equipment should equal the value thereof, plus one per cent. per month for each month or fraction of a month such piece of equipment should have been in use, no other rental should be paid to the lessor and the title thereto would become vested in the government; and that at the conclusion of the work the government might at its option purchase any piece of equipment by paying the lessor the difference between the valuation of the equipment, plus one per cent. per month for each month or part of month that such piece of equipment should have been in use, and the total rental therefor paid for such piece of equipment. The petition further alleged that the plaintiff did not have copies of such agreements, but that the copies were in the possession and control of the transfer company, and were available to the defendants; that at the time the plaintiff executed the contract first above referred to as exhibit A he was informed and advised by Wimpy of the "recapture clause," and the plaintiff placed his trucks in the service of these defendants subject to the terms and provisions of this clause; that during the months of March and April 1941 the government exercised its right to and did recapture the trucks referred to in the petition under the authority of this recapture clause; that at that time these trucks under the terms of such clause had an agreed valuation of $8253.76, and that these trucks were recaptured by the government at that sum. The petition as amended further alleged that the government's appraisal value of the trucks was $8253.76; that the defendants agreed that in the event the government saw fit to exercise the recapture clause in the contract the defendants would pay to the plaintiff for his trucks a sum and amount equal to the government's appraisal; that under the terms of the agreements, contracts, and understanding alleged in the petition the defendants and each of them were indebted to the plaintiff in the sum of $8253.76 less the sum of $6385.01, namely, $1868.75.
To the judgment sustaining the demurrers and dismissing the action the plaintiff excepted.
The petition does not show the amount of rental for the use of the *Page 728 
trucks which was to be paid by the government to the contractors, and does not show the amount which was paid by the government as such rental. It shows the amount of rental which was to be paid to the plaintiff who did not furnish the trucks under any agreement with the government, but who furnished the trucks to the subcontractor of the contractors with the government. He furnished these trucks under a written agreement wherein it was provided that the government, in its agreement with the contractors, had a right to pay up to a certain amount as rent on the trucks when it should recapture the trucks, and they would become the property of the government. In this written agreement the plaintiff agreed that if the government exercised the right to take the trucks at a time when rentals paid by the government equaled the appraised value, and the trucks became the property of the government, he "would have no further claim" on the trucks against the defendants or against the contractors. In this agreement it was recited that all of the parties had agreed on the government's appraisal of the trucks. The amount paid or to be paid by the government as rent in order for it to have the right to exercise the recapture clause and take these trucks would have to appear in order for it to be determined whether or not the plaintiff was entitled, under the allegations of the petition, to recover any amount on the exercise by the government of its right to take such trucks under the recapture clause of the contract with the contractors, subject to which the plaintiff rented the trucks. Plaintiff is given permission to amend counts 1 and 5.
Count 4 wherein it is alleged that the plaintiff sold a certain number of trucks to the defendants for a stipulated price, and that the plaintiff had received less than the price at which the trucks trucks were sold, and that the defendants were indebted to the plaintiff for an alleged balance, set out a cause of action and the court erred in sustaining the demurrer to this count. The exhibit A is not a part of this count.
The court did not err in sustaining the demurrer to counts 1 and 5 of the petition.
Judgment affirmed in part, and reversed in part. Sutton andFelton, JJ., concur. *Page 729